## CAROLINE GUNNERSON v. METROPOLITAN NATIONAL COMPANY.[1]

No. 28,250.

February 6, 1931.

*Timerman & Vennum,* for appellant.

*Loring & Anderson* and *L. O. Rue,* for respondent.

[1]Reported in 234 N. W. 676, 235 N. W. 909.

DIBELL, J.

Action to recover $5,000 and interest upon a rescission by the plaintiff upon the ground of fraud of the purchase of a mortgage from the defendant. There was a verdict for the plaintiff for $5,000 and interest. The defendant appeals from the order denying its alternative motion for judgment or a new trial.

There are two questions:

(1) Whether the defendant fraudulently represented the value of the land and improvements.

(2) Whether there was a material misrepresentation that the mortgagor lived upon the land or that it was occupied.

These questions were submitted to the jury. The trial resulted in a general verdict for the plaintiff. It is to be assumed that both were found for plaintiff. The defendant claims that the evidence does not justify a verdict for the plaintiff upon the first charge of misrepresentation; and that there was no evidence justifying a submission of the second.

In March, 1928, the plaintiff went to the office of the defendant in Minneapolis to invest $5,000 in a farm mortgage. She had done business with it before. The defendant had succeeded to the mortgage business of the Metropolitan National Bank. The company had discontinued dealing in farm mortgages and so informed the plaintiff. About March 1, 1920, one Reddingius had made a mortgage to the Metropolitan National Bank of Minneapolis, as trustee, for $5,000. The mortgaged property was located in Mahnomen county, about 275 miles northwest of Minneapolis. It was sold to one Vrieze. In 1925 the mortgage was renewed for three years. The defendant was desirous of having the mortgage paid and corresponded with Vrieze. He was trying, but failing, to get a new mortgage. He failed upon application to the rural credits bureau. He had paid his interest well, and was trying to stay with his land, was apparently a man of some force, owned other property, but felt that he was about at the end with this loan. The defendant told the plaintiff of this mortgage and seems to have produced the application by Reddingius for the 1920 loan and to have

given her some information. The defendant, the jury could find, represented the value to be $9,400, exclusive of the buildings, which it put of the value of $2,500, and said there was $2,500 in insurance thereon. The defendant did not pretend that it had actual knowledge but was putting before the plaintiff what the jury could find was a representation of substantially the value of the land and buildings. An officer of the defendant had seen the property in 1920, had examined it then, and had seen it again in 1925. Other testimony of more definite character puts the value at from $15 to $27 an acre, that is, from $2,400 to $4,320. None puts it higher.

The buildings were examined shortly before the trial by one competent to estimate values. He described the house as "a wreck," the doorknob was off, the door was open, the plaster was down, and the compo-board partitions had fallen. There was nothing to the barn except a shed, the roof was gone, the sides were of 2 x 4s and sheathing and were bulged out or fallen in. The granary was the best of all. The jury might find that all the buildings were not worth more than $500 or might find the value less. They had not been occupied for years. Other testimony was of like kind.

The defendant's officer who negotiated with the plaintiff had been in the banking or investment business for years. He must have known, as all others did, of the fall in values after 1920. There was nothing to indicate that the particular land was of exceptional value. The plaintiff was the manager of a branch laundry in Minneapolis, and it is argued that she had business capacity and should be charged with knowledge. She had been interested in nine or ten mortgages before. She had the business experience stated; her knowledge of farm mortgages in the region where she purchased was valueless, and the defendant saw and embraced the opportunity.

The question of what representations and misrepresentations were made was for the jury. If the testimony of the plaintiff is believed, and that was for the jury, she came to the defendant, with whom she had dealt before, to buy a farm mortgage. She declined to listen to its suggestions that she buy a city mortgage. It was

interested in having the Vrieze mortgage paid and put it off on her by getting the mortgage which it had in charge paid with her money, a new mortgage taken from Vrieze to it, and then assigning it to the plaintiff. There was nothing concealed about the transaction. That was the arrangement contemplated. She trusted. The jury found just these facts. The evidence justified it in finding so. Business must not be done that way; and if it is and the jury or other fact finding tribunal finds the facts so, relief cannot be had on appeal. 3 Dunnell, Minn. Dig. (2 ed.) § 3816. A discussion of cases is unnecessary. Hardly on its own showing can the defendant excuse itself. Almost as a matter of law it should be held in the wrong; but we recognize an element of fact, and an error in a matter now to be considered.

■ The representation that the mortgagor lived upon the quarter or that it was occupied was material. A mortgagor occupying a farm is more attached to it. It receives better treatment. Occupancy by a tenant is better than no occupancy at all. If the land is occupied, and especially if the owner lives upon it, the fact is an inducement to the purchaser of a mortgage upon it. Vacant buildings are not insured like occupied ones. The question of a false representation as to the mortgagor's living upon the quarter, or upon its occupancy, was submitted to the jury. We do not find evidence justifying such submission. The allegation of the complaint was that the defendant represented that the mortgagor lived upon the property. The charge referred to occupancy by the owner. The buildings were on one corner of the quarter. The mortgagor owned 80 acres adjoining. He lived in the buildings upon the 80. Apparently he farmed the quarter, as much as it was farmed, from the buildings on the 80, a half mile or so away from the buildings on the quarter. To that extent he occupied the mortgaged land. The jury was told that it might return a verdict, upon the theory of a rescission, either if the defendant had fraudulently misrepresented the value of the land and the buildings, or the fact of occupancy by the mortgagor living upon the property. Its affirmative finding on the first was enough; but whether or how it found upon the first or the second we do not know.

The defendant is not entitled to judgment. It is entitled to a new trial.

Order reversed.

AFTER REARGUMENT.

On April 10, 1931, the following opinion was filed:

DIBELL, J.

A reargument was granted upon the question whether there was evidence sufficient to go to the jury upon the question whether the defendant represented that the mortgagor lived upon the farm mortgaged. In paragraph 2 of our former opinion we held there was not, and this holding was the basis of the reversal.

■ The representative of the defendant testified that he told the plaintiff that "the record of the borrower [mortgagor] was good; he had been prompt in paying his interest, except one time; he was living there and he was farming this place, and I believed he was a good man." Again he told the plaintiff that "the land was held by a farmer who intended to stay there, and would be worth more to him than he probably could get if he were forced to sell the land." Again he said: "The farmer always puts a little higher valuation on the property than we do, but we always go out and investigate and find out that the property is all right and that everything is all right before we buy a mortgage—we always do." He said that the buildings were insured for $2,500. The mention of insurance upon property is a suggestion that it is occupied. The usual provision of a policy is that vacant property is not covered. There was a provision of this kind in this policy; and though the insurance may have been valid, though the property was vacant, the statement that there was insurance was of force in suggesting occupancy.

Another witness, a young lady employe of the defendant, testified that he said "that it was practically impossible for anyone to say what the actual value was because there was no market for land; the land was held by a farmer who intended to stay there, and would be worth more to him than he probably could get if he were forced to sell the land." He testified that he knew that Vrieze,

the mortgagor, lived on an adjoining 40. In response to a question he said:

A. "I knew that he lived on this land.

Q. "On a piece of land adjoining this?

A. "I knew that he lived on this land—this farm.

Q. "Well, did you tell Mrs. Gunnerson that?

A. "That he lived on this farm?

Q. "Yes.

A. "I told her that he lived in the buildings on a 40 adjoining this on the north, but that is living on this land."

The evidence is scant. The jury might find fairly that the plaintiff, from the representations made to her, thought she would get a mortgage on a farm of 160 acres with $2,500 worth of improvements, insured for that sum, farmed and lived upon by the owner and mortgagor, and relied upon what was told her, when in fact the buildings were not and had not been habitable for years.

We were in error in respect of our holding stated in paragraph 2 of the opinion relative to this particular representation that the mortgagor lived upon the land. The reversal of the order of the trial court is vacated, and the order from which the appeal was taken is affirmed.

Order affirmed.